**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: September 30 2019**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 17-53013 |
| | ) | |
| Eno Iftiu, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 18-05023 |
| | ) | |
| Yogurt Treats Niles, LLC and | ) | Judge John P. Gustafson |
| Yogurt Treats III, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Eno Iftiu, | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OF DECISION AND ORDER

This Adversary Proceeding is before the court on Plaintiffs Yogurt Treats Niles, LLC and Yogurt Treats III, LLC's[1] ("Plaintiffs") Complaint against Defendant-Debtor Eno Iftiu

---

1/ While Yogurt Treats Niles, LLC and Yogurt Treats III, LLC are two distinct entities, the court will refer to the two interchangeably for purposes of this Memorandum.

("Defendant-Debtor"). In their Complaint, Plaintiffs seek a determination that the $106,507.16 owed to them by Defendant-Debtor, a debt related to a disputed transfer of a frozen yogurt business, is nondischargeable under 11 U.S.C. §§523(a)(2)(A), (a)(4), and (a)(6).[2] This proceeding is now before the court for decision after a trial was held on March 6 and 7, 2019.[3] Per the court's request, both Defendant-Debtor and Plaintiffs filed post-trial briefs. [Doc. ##24, 25].

This Adversary Proceeding was transferred to this Western Division court on December 3, 2018 from its Eastern Division counterpart. [Doc. #11]. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334, 157(a), and General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that bankruptcy courts may hear and decide. 28 U.S.C. §157(b)(1) and (b)(2)(I).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined all the submitted materials, weighed the credibility of witnesses, considered all of the admitted evidence,[4] and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that the debt owed to Plaintiffs by Defendant-Debtor in the amount of $106,507.16 is nondischargeable under 11 U.S.C. §523(a)(2)(A).

## FINDINGS OF FACT

Plaintiffs are related companies, both owned by an entity named Stark Enterprises, that operated a Menchie's frozen yogurt business ("Frozen Yogurt Business" or "Business") at the Great East Plaza Annex Shopping Center ("Mall") located in Niles, Ohio. Plaintiffs entered into a lease agreement ("Lease") with the Mall's landlord, Kennedy Mall Ltd. ("Landlord"), on

---

2/ Despite outlining claims under §523(a)(4) and (a)(6) in their Complaint, Plaintiffs' post-trial brief argues solely under §523(a)(2)(A). Because the court finds that Plaintiffs prevail on their §523(a)(2)(A) claim, the court will not address §523(a)(4) and (a)(6).

3/ The parties stipulated to holding an administratively consolidated trial at which both Plaintiffs and the plaintiffs in Case No. 18-05024 participated. For purposes of this Memorandum of Decision, the court will only refer to material relevant to Plaintiffs' claims against Defendant-Debtor.

4/ Plaintiffs' admitted exhibits are referred to as [Pl. Ex. __] and Defendant-Debtor's admitted exhibits via [Def. Ex. __].

2

November 14, 2013 that set forth the terms of the Frozen Yogurt Business' occupancy at the Mall.

Defendant-Debtor Eno Iftiu operated various frozen yogurt businesses in Northeast Ohio. During the summer of 2015, Plaintiffs entered into discussions with Defendant-Debtor regarding the transfer of Plaintiffs' Frozen Yogurt Business at the Mall. In exchange for a down payment and promissory note totaling $75,000.00, Plaintiffs agreed to both sell the Frozen Yogurt Business' assets and sublease its premises to Defendant-Debtor.

After Plaintiffs vetted Defendant-Debtor's business acumen by reviewing documents detailing the operation of his other frozen yogurt businesses, the parties executed an asset purchase agreement ("APA") on September 19, 2015. [Def. Ex. B]. Under the APA, Defendant-Debtor agreed to pay Plaintiffs $30,000.00 as a down payment and sign a promissory note for the remaining $45,000.00. [*Id.*, p. 3, 51-53]. Defendant-Debtor still owes Plaintiffs a balance of $40,766.72 under that promissory note.

The APA also included: 1) an indemnification provision outlining Defendant-Debtor's duty to indemnify Plaintiffs if Defendant-Debtor violated the terms of the APA [*Id.*, pp. 6-7]; 2) a non-assignability provision that barred Defendant-Debtor from assigning his interest in the APA to a third-party [*Id.*, p. 9]; 3) a provision requiring that Defendant-Debtor obtain the consent of the Mall's Landlord regarding Plaintiffs' assignment of the Lease to Defendant-Debtor [*Id.*, pp. 4-5]; and 4) a security agreement that granted Plaintiffs a security interest in the Frozen Yogurt Business assets that were sold to Defendant-Debtor. [*Id.*, pp. 28-50].

On December 4, 2015, Plaintiffs, Defendant-Debtor, and the Mall's Landlord executed an amendment to the APA ("Lease Assignment") that detailed the terms of Plaintiffs' assignment of its Lease with the Mall's Landlord to Defendant-Debtor. [Pl. Ex. 5, pp. 6-19]. The parties agreed that, although Defendant-Debtor would take possession of the Frozen Yogurt Business' location at the Mall and be obligated to make regular Lease payments, Plaintiffs would remain liable under their original Lease[5] with the Mall's Landlord. [*Id.*, p. 9]. The Lease Assignment also included a non-assignability provision that reiterated that Defendant-Debtor was barred from transferring his

---

5/ Under the terms of the Guaranty of Plaintiffs' Lease with Landlord, which was incorporated into the APA and Lease Assignment [Def. Ex. B, p. 2], Plaintiff Yogurt Treats Niles, LLC was the tenant at the Mall and Plaintiff Yogurt Treats III, LLC was the guarantor of the tenant's Lease obligations. [Pl. Ex. 5, p. 25]. Per Plaintiffs' representative's testimony at trial, the Lease had a term of 10 years, was entered into by Plaintiffs in 2013, and had outstanding obligations of around $425,000.00 when Plaintiffs began negotiating with Defendant-Debtor. Thus, when Defendant-Debtor entered into the APA and Lease Assignment with Plaintiffs, he became jointly liable with Plaintiffs to the Landlord pursuant to those terms of the Lease.

3

interests in the Frozen Yogurt Business and Lease Assignment to a third-party. [*Id.*, p. 8].

In March of 2017, the Landlord brought an action in the Trumbull County Court of Common Pleas against Plaintiffs and Defendant-Debtor for breach of the Lease and Lease Assignment, asserting that Plaintiffs and Defendant-Debtor were jointly and severally liable for the damages resulting from a default. [*Id.*, pp. 2-3]. Plaintiffs paid the Landlord $50,000.00 to settle the lawsuit, incurring legal fees in the amount of $15,740.44 in the process. During their litigation with the Landlord, Plaintiffs discovered that Defendant-Debtor had assigned his interest in the Business and APA/Lease Assignment to a third party, the Lowerys, and that the Lowerys had been attempting to operate the Frozen Yogurt Business before the default occurred.

Defendant-Debtor filed the underlying Chapter 7 case on December 19, 2017. [Case No. 17-53013, Doc. #1]. On Schedule E/F, Defendant-Debtor listed an unsecured debt in the amount of $38,135.63 owed to Stark Enterprises, the owner of Plaintiffs [*Id.*, p. 24], and an unsecured debt in the amount of $75,000.00 owed to Plaintiff Yogurt Treats Niles, LLC. [*Id.*, p. 26].

Plaintiffs filed a Complaint against Defendant-Debtor on April 10, 2018, initiating this adversary proceeding. [Doc. #1]. At the trial held on March 6 and 7, 2019, the parties presented testimony from: 1) Heather and Torono Lowery, the couple that attempted to operate the Frozen Yogurt Business after Defendant-Debtor assigned them his interest in the APA and Lease Assignment; 2) Steve Coven ("Mr. Coven"), representative of Stark Enterprises, the owner of Plaintiffs; 3) Defendant-Debtor Eno Iftiu; and 4) Stanley Dub, an attorney who assisted the Lowerys with the filing of a Trumbull County lawsuit against Defendant-Debtor. At the close of trial on March 7, 2019, Plaintiffs' Exhibit 5 and Defendant-Debtor's Exhibits A through K, M, and N were admitted into evidence without objection.

## LAW AND ANALYSIS

### I. Exception to Discharge under 11 U.S.C. §523

Plaintiffs seek a determination that the debt owed them by Defendant-Debtor in connection with the APA and Lease Assignment is nondischargeable under 11 U.S.C. §523(a)(2)(A). Exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998); *In re Livingston,* 372 F. App'x 613, 618 (6th Cir. 2010). Additionally, "[t]he objecting creditor bears the burden of proof by a preponderance of the evidence to establish the debt is of the type excepted from discharge." *Brann v. Oxford* (*In re Oxford*), 440 B.R. 772, 777 (Bankr.

4

W.D. Ky. 2010)(citing *In re Molino*, 225 B.R. 904, 907 (6th Cir. BAP 1998)); *see also*, *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

**II. 11 U.S.C. §523(a)(2)(A)**

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services...to the extent obtained by[6] – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...." In order to except a debt from discharge under this section, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert,* 141 F.3d at 280-81.

Under §523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Baker v. Wentland* (*In re Wentland*), 410 B.R. 585, 594 (Bankr. N.D. Ohio 2009)(quoting *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983)). "False pretenses are distinguishable from false representations in that 'a false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression while a false representation involves an express representation.'" *Coughlin Chevrolet, Inc. v. Thompson* (*In re Thompson*), 458 B.R. 409, 421 (Bankr. S.D. Ohio 2011)(quoting *Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 127 B.R. 1004, 1009 (N.D. Ill. 1991)); *see also*, *Wentland*, 410 B.R. at 594.

In addition to "false representation" and "false pretenses," the Supreme Court has held that §523(a)(2)(A) also provides a cause of action for "actual fraud," or fraud that "[does] not require a misrepresentation from a debtor to a creditor." *Husky Int'l Elecs., Inc. v. Ritz*, ___U.S.___, 136 S.Ct. 1581, 1587, 194 L.Ed.2d 655 (2016); *see also, Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001). "'Actual fraud' includes fraudulent transfers and "fraudulent conduct" that deals in "acts of concealment and hindrance." *Husky Int'l Elecs., Inc.*, 136 S.Ct. at 1587.

A debtor's intent to defraud a creditor is measured by a subjective standard and must be

---

6/ Enacted in 1984, the Bankruptcy Amendments and Federal Judgeship Act ("BAFJA") added the phrase "…to the extent obtained by…." to §523(a)(2).

ascertained through review of the totality of the circumstances. *Rembert,* 141 F.3d at 281-82; *see also*, *Oxford*, 440 B.R. at 777. A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," given that direct, express proof of intent is rarely available. *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (6th Cir. BAP 1999) (quoting *Hunter v. Sowers* (*In re Sowers*), 229 B.R. 151, 159 (Bankr. N.D. Ohio 1998)); *Oliver v. Zimmerman* (*In re Zimmerman*), 567 B.R. 521, 526 (Bankr. N.D. Ohio 2017); *Risk v. Hunter* (*In re Hunter*), 535 B.R. 203, 213 (Bankr. N.D. Ohio 2015); *Chase Bank v. Brumbaugh* (*In re Brumbaugh*), 383 B.R. 907, 912 (Bankr. N.D. Ohio 2007); *EDM Machine Sales v. Harrison* (*In re Harrison*), 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003); *Oxford*, 440 B.R. at 777. "If there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor." *Zimmerman*, 567 B.R. at 526; *Wentland*, 410 B.R. at 594; *Buckeye Retirement Co., LLC v. Kakde (In re Kakde)*, 382 B.R. 411, 427 (Bankr. S.D. Ohio 2008).

Relevant here, only "the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt." *Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998). Accordingly, the focus of a §523(a)(2)(A) analysis is on whether the debt at issue arises from a fraudulent act or actions. *See*, *Id.*; *see also*, *Ghadimi v. Ashai* (*In re Ashai*), 211 F.Supp.3d 1215, 1237-38 (C.D. Cal. 2016)(collecting cases holding that §523(a)(2)'s "to the extent obtained by" language precludes a finding of nondischargeability where the fraudulent misrepresentation occurred after the debt arose); *Weems & Stephens Equine Hosp., Inc. v. Hancz* (*In re Hancz*), 2010 WL 3909959 at *3, 2010 Bankr. LEXIS 3473 at **7-10 (Bankr. N.D. Ill. September 30, 2010)(finding that a fraudulent statement made after the debt at issue arose could not support a finding of nondischargeability under §523(a)(2)(A)).

### III. The Debt Owed to Plaintiffs by Defendant-Debtor is Nondischargeable Under §523(a)(2)(A)

In applying §523(a)(2)(A) to the facts established at trial, the court finds that Plaintiffs have met their burden as to all four required elements. Accordingly, the court finds that Defendant-Debtor's breach of the APA and Lease Assignment warrants a determination that his debt owed to Plaintiffs in the amount of $106,507.16 is nondischargeable under §523(a)(2)(A).

Here, Defendant-Debtor obtained property through a material misrepresentation, satisfying the first §523(a)(2)(A) element. The court finds that Defendant-Debtor's conduct in entering into the APA and Lease Assignment included misrepresentations. Defendant-Debtor obtained the benefit of an opportunity to operate and profit off of the Frozen Yogurt Business by warranting

6

that he would not assign his interest in the APA/Lease Assignment to a third-party. However, as established by Defendant-Debtor's testimony at trial, he had already assigned his APA/Lease Assignment interest to the Lowerys before executing the APA and Lease Assignment. Defendant-Debtor also admitted that he knew he was violating the APA/Lease Assignment's non-assignability provisions as he entered into those agreements.

Further, Plaintiffs have established that Defendant-Debtor's misrepresentations were material to the agreement reached between the parties. Under the written terms of the agreement memorialized in the APA and Lease Assignment, Plaintiffs were transferring operation of the Frozen Yogurt Business to Defendant-Debtor so that he, an individual with experience in operating frozen yogurt stores, could operate the Business. To that end, Plaintiffs included non-assignability provisions in both the APA and Lease Assignment, both of which Defendant-Debtor had already violated when he signed those agreements. Thus, the court finds that Defendant-Debtor's false representation that he would not assign his interest in the APA/Lease Assignment to a third party is a material misrepresentation.

In sum, the court finds that the first §523(a)(2)(A) element has been met here because Defendant-Debtor obtained a benefit through material misrepresentations that he knew were false as he made them.

As for the second element, which looks to the Debtor's intent, the court finds that the evidence presented at trial established that Defendant-Debtor intended to deceive Plaintiffs when he entered into the APA and Lease Assignment. Defendant-Debtor not only admitted that he knew he was violating the APA/Lease Assignment's non-assignability provisions as he ostensibly agreed to them,[7] his actions in assigning his interest in the Frozen Yogurt Business to the Lowerys demonstrate purposeful conduct, rather than inadvertence or carelessness. *See*, *Hamo,* 233 B.R. at 724. In other words, the record reflects that Defendant-Debtor acted deliberately when he agreed to the non-assignability provisions in the APA and Lease Assignment, despite knowing full well that he had already violated those provisions through his agreements with the Lowerys.

---

7/ At trial, Defendant-Debtor made repeated reference to the fact that he signed the APA and Lease Assignment in lockstep with the advice of his former attorney, Mr. Ashraf Abbas, and testified that he personally did not understand those contracts' terms. However, it is axiomatic that "an attorney acts as the agent of his client, and his client is bound by the acts of [his] agent." *In re Eagle-Picher Indus., Inc.*, 201 B.R. 921, 922-23 (Bankr. S.D. Ohio 1996)(citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1389-90, 8 L.Ed.2d 734 (1962)(additional citations omitted)). Further, Attorney Abbas did not testify and the court does not find Defendant-Debtor's testimony regarding his good-faith blind reliance on the advice of counsel to be credible. Moreover, the anti-assignment provisions were clear and not technical or difficult to understand.

7

Thus, the court finds that Plaintiffs have met their burden under the second element of §523(a)(2)(A).

The evidence presented at trial also showed that Plaintiffs were justified in relying on Defendant-Debtor's express representation that he would not assign his interest in the Frozen Yogurt Business to a third party, satisfying the third §523(a)(2)(A) element. Defendant-Debtor had prior experience in operating frozen yogurt businesses, and Plaintiffs vetted Defendant-Debtor prior to entering into the APA and Lease Assignment by inspecting documents pertaining to Defendant-Debtor's other frozen yogurt ventures. There was no prior indication that Defendant-Debtor would act in direct contravention of the terms of the APA and Lease Assignment. Accordingly, the court finds that the third §523(a)(2)(A) element is met here.

Lastly, in analyzing the fourth §523(a)(2)(A) element, which looks to whether Plaintiffs' reliance on Defendant-Debtor's misrepresentations was the proximate cause of their loss, the court finds that Plaintiffs have met their burden. Both sources of Plaintiffs' damages, the outstanding balance owed on the promissory note and the costs of litigating the Lease default with the Landlord, flowed from Defendant-Debtor's false representation that he, a supposedly experienced operator of frozen yogurt stores, would be operating the Frozen Yogurt Business pursuant to the terms of the APA and Lease Assignment. Per Plaintiffs' representative Mr. Coven's credible testimony, Plaintiffs would not have extended Defendant-Debtor credit in the form of a promissory note had they known that he had already involved an inexperienced third party, the Lowerys. Further, because Plaintiffs believed that Defendant-Debtor was operating the Frozen Yogurt Business in conformity with the non-assignability provisions, they had no opportunity to cure the Lease default or otherwise attempt to mitigate the harm that resulted from the commencement of litigation by the Landlord.

Defendant-Debtor argues that Plaintiffs cannot establish that his misrepresentations caused the damages Plaintiffs allege. He asserts that the Frozen Yogurt Business was unprofitable before Plaintiffs and Defendant-Debtor entered into the APA/Lease Assignment. Therefore, Plaintiffs cannot link the damages flowing from the Lease default to Defendant-Debtor's assignment of his interest in the APA/Lease Assignment to a third-party, the Lowerys. Essentially, Defendant-Debtor argues that a default under the Lease was inevitable and not a result of his misrepresentations.

First, there was no credible evidence presented at trial showing that the Frozen Yogurt

8

Business was unprofitable when Plaintiffs operated at that location. In fact, Mr. Coven credibly testified that the Frozen Yogurt Business was operating normally as a "Menchies" prior to Plaintiffs transaction with Defendant-Debtor.

Second, there was no explanation why Defendant-Debtor wanted to pay $75,000.00 for a frozen yogurt business that he now argues was inevitably doomed to fail, even if he had operated it himself.

Moreover, the court finds this argument unavailing because, as Plaintiffs point out, Defendant-Debtor's assignment of his interests in the APA/Lease Assignment facilitated the Lowerys' leasehold occupancy and attempt to operate the Frozen Yogurt Business. Defendant-Debtor also failed to inform Plaintiffs that a third-party was even involved, likely because third-party involvement was expressly prohibited by the terms of the APA and Lease Assignment. Thus, Plaintiffs had no opportunity to cure the default on the Lease, assist with the operation of the Frozen Yogurt Business, or otherwise attempt to mitigate their damages because it was only after the Landlord initiated a lawsuit that Plaintiffs became aware of Defendant-Debtor's misrepresentations in entering into the APA and Lease Assignment. In other words, Plaintiffs' reliance on Defendant-Debtor's compliance with the terms of the APA and Lease Assignment played a primary role in causing Plaintiffs' damages.

Thus, Defendant-Debtor's improper assignment of his APA/Lease Assignment interests was a proximate cause of Plaintiffs' damages. Accordingly, the court finds that Plaintiffs have met their burden in linking Defendant-Debtor's misrepresentations with the damages Plaintiffs allege, meeting the fourth §523(a)(2)(A) element.

## **CONCLUSION**

The terms of the APA and Lease Assignment contemplated that Plaintiffs were transferring the Frozen Yogurt Business' assets and leasehold to Defendant-Debtor so that he could operate the Business. Instead, the facts established at trial show that Defendant-Debtor did not intend to operate the Business because he had already assigned away his interest in the APA/Lease Assignment before entering into those agreements with Plaintiffs. Further, Defendant-Debtor's assignment of his rights under the APA/Lease Assignment to a third-party were a proximate cause of Plaintiffs' damages because, had Defendant-Debtor not represented that he was an experienced frozen yogurt store operator looking to operate yet another store, the Frozen Yogurt Business transaction between Plaintiffs and Defendant-Debtor either would not have happened, or could

have included different terms.  Accordingly, the court finds that, Plaintiffs having met their burden by a preponderance of the evidence, Defendant-Debtor's debt owed Plaintiffs is nondischargeable under §523(a)(2)(A).

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the $106,507.16 owed to Plaintiffs Yogurt Treats Niles, LLC and Yogurt Treats III, LLC by Defendant-Debtor Eno Iftiu is nondischargeable under §523(a)(2)(A). A separate judgment shall issue consistent with this memorandum.